May I please the court? My name is Emily Durstein Friesen on behalf of Appellant Jerry Frazier. This court should grant an evidentiary hearing here because Frazier has been sentenced to life in prison without the possibility of parole in a case where counsel failed to call exculpatory witness who would have affirmatively testified I'm going to help us get to where you want us to go. You've got a colloquy which is much more thorough than the average Common Pleas Court waiver colloquy. You're arguing that I didn't mention the name of the witness. I guess you've got to make that argument, but it's a silly argument. It was a pretty thorough colloquy. We've got the ENPA standard. There are two issues here. One is whether you think it was procedural or whether it was on the merits. Help me understand this. If it was procedural, why don't you lose because it's inadequate in independent state law? If it's on the merits, why don't you lose because it went for deference? Yes, Your Honor. My co-counsel will be addressing the standard of review issue, but preliminarily our position is that review is de novo. However, the state court ruling is characterized whether procedural or on the merits or something alternative. I'm saying you don't want to answer my question. Help me understand how you are legally entitled to a hearing. Give me that colloquy. What would the hearing be? Yes, Your Honor. The hearing would be an evidence hearing hearing to determine what trial counsel... The strategy. Yes, the trial counsel's actual strategy for failing to call exculpatory witness Laurie Garrett who would have affirmatively testified. I can't remember a case seeking habeas like this one where you didn't have an affidavit from the lawyer confessing to some sort of error. We get all kinds of defense counsel affidavits. I was struggling with alcoholism at that time. I didn't have any sleep. I forgot to do this. There's nothing here at all from defense counsel that was presented to the state court or even later to the federal district court. Why not? Your Honor, we do not have an affidavit from trial counsel. It is possible that Frazier tried to obtain one and could not. But at an evidence hearing, counsel would be called on... But let's back up a minute. In the state court proceedings, the only thing decided was that based on this colloquy, there is Pennsylvania law saying you have waived your right to habeas because of this colloquy. There was no assessment or discussion whatsoever as to counsel or the trial strategy or anything. And then the district court goes off on that tangent, saying it was merits-based and addressing the merits. It seems to me there's a disconnect here. And I go back to Chief Judge McKee's question. Don't we have to look at whether there was an independent and adequate state ground and assess that and reason through that, the argument, the analysis that the state court actually used? Your Honor, yes, my co-counsel will address the standard review issue, whether this adequate or independent state ground applies. But however it is addressed, the review here is de novo, which means that Frazier is entitled to an evidence hearing. You're saying, he's going to answer that question, but no matter what he tells you, I'm telling you you've got de novo review. So you can just kind of sit there. I'm sorry, Ms. Mahoy. She can just kind of sit there and let you carry the water for her. Why is it de novo review? If it's an adequate and independent state ground, why in the world is it de novo review? Your Honor, this case is different and unique because Garrett, the exculpatory witness, provided an affidavit specifically explaining her exculpatory testimony. I know we're at a disadvantage here, but believe me, every case that doesn't get to this court, unless there's something on the record as to what that witness would say, would never get here. So there's always going to be an affidavit from the witness saying, had I been called to testify, this is what I would have said. And don't we have to consider that affidavit with all the other evidence of record? Namely, Garrett told others some pretty important things. She would have been exposed to some pretty severe impeachment on several levels, would she not? Your Honor, Commonwealth's hypothetical and theoretical justifications for counsel's failure to recall Garrett are exactly the type of sheer speculation that- Remember the reading of the prepared script, which I know you put a lot of time into. Answer this question. Your Honor, this- Do you want me to go through the impeachment? I mean, I assumed you knew what I was referring to, but- Yes. You know, she told two people that she didn't see anything. She was protecting the five-year-old, she was lying down, she didn't see anything, right? That's impeachment. Yes. And then there's the big whopper. What's the whopper? That she didn't see anything at all. No. The whopper is Jerry Frazier calling me, right? And said, hey, I know George is okay, but boy, that Cologne guy, I don't even know him, right? I mean, that's, boy, if I'm a defense lawyer in this case, I don't want the jury to hear that, right? Your Honor, factual disputes about what Garrett would have said or what she would not have said or what she saw or what she did not see are best resolved at an evidentiary hearing where she would be called to the stand and trial counsel would also be called to the stand regarding- Well, the point is, was counsel- did he act in a substandard manner? And we know that he- all these were in a supplemental appendix the district court didn't have. We know he had these in discovery. So can we not reasonably say that all we would be doing here would be sending it back to the district court for it to bolster its view that counsel acted reasonably because given these different situations, these inconsistent statements and the impeachment, you can't say as a matter of law that he was ineffective or that there was- would be prejudice as a likely matter. Your Honor, though, we can only speculate if double deference under AEDPA applies. And the speculation and the deference to counsel's decision does not apply here. So trial counsel's actual rationale for why he did not call Laura Garrett is important. There's a presumption of strategy, right? There is. I mean, he knew- this isn't one of these cases where he didn't investigate and he didn't know that Laura Garrett was available. Laura Garrett was in the courtroom. So it's obvious he made an intentional decision not to call her. So what's in question is whether there's a reasonable basis for that, right? Yes, Your Honor. But how do you overcome the presumption that he thought, gee, I'm not going to call any witnesses, I'm going to make the time-honored argument that defense lawyers often make, which is, hey, we don't have to call anybody. The judge will instruct you. We have no obligation. The burden is on them. And guess what? It's a very high burden. It's beyond a reasonable doubt. Yes, Your Honor. It is possible. However, there is no question that Laura Garrett's testimony was genuinely exculpatory and would have materially aided the defense. I'm willing to give you that assumption. I'm not so sure. It's clearly not cumulative. I don't believe the state court came up with that. It's clearly not cumulative testimony. It would be mature enough for that extent. But when you look at the colloquy, and this goes back to the affidavit, not having an affidavit from the attorney may well have failed to your argument. But one of the things that was asked during the state court colloquy, the court asked, after discussing this with your attorney, that's what you have both decided, which is not to call a witness. Defendant, absolutely. And then the court says, all right. But the defendant clearly said it was his decision as well as his client's. The attorney has to advise. In the end, it is the client's decision, not the lawyer's decision. And the defendant is saying, yeah, it's my decision, and I'm fine with that. How do you get past that? Your Honor, if counsel acted reasonably in refusing to call Garrett, that any advice he might have given Frazier, and Frazier relied on during the colloquy. I'm not so sure that's true. In my mind, and maybe I'm making a distinction where none exists, in my mind there's a difference between being ineffective in not calling the witness, on the one hand, and being ineffective in advising a defendant as far as whether or not he has the right to call a witness. To me, that's two very, very different things. The lawyer could have just said to his client, look, this is your call. I'm not sure it's a great idea to put this witness on the witness stand. You ignore her. I won't ignore her. If I wouldn't choose, I wouldn't call her. But it's your trial. It's your life. You've got to make that call. Now, if he tells her that, and then the defendant says, I'm not putting her on the witness stand, I don't see any Sixth Amendment issue as to advising the client, but maybe Sixth Amendment issues as to not calling Garrett, had he not given that advice and had the client not waived it. But in your state court brief, you did not allege, and you're trying to do it here by conflating the two, you did not allege trial counsel was ineffective in advising Mr. Frazier not to call Garrett. You're simply saying that he was ineffective in not calling Garrett. To me, that's a very different question. Your Honor, it is our position that both of these types of ineffectiveness stem from counsel's ineffectiveness in failing to... But now you just said both kinds of ineffectiveness. You're conceding that there are two different issues there, two different kinds of ineffectiveness. That was not presented in the state court. I don't think it was presented in the district court either. So why wouldn't that be waived as to whether or not he was ineffective for not advising his client that he had the right to call Garrett if he wanted to? Your Honor, it would be unfair to preclude Frazier's ineffective assistance of counsel claim on that basis alone. Can you show me how much of that is fair? Frazier says nothing to do with this. They don't pay us to be fair. They pay us to apply the law. We are trying to obtain justice for our client, Jerry Frazier. Same question. Justice has nothing to do with it. It's what the law requires us to do. Sometimes it happens to coincidentally equate with what some people would call justice, and others would probably say not just. And other times, justice and the legal result don't quite get together. Your Honor, in cases such as this, a colloquy is only as valid as the advice that gave rise to it, and it does not negate an ineffectiveness claim. The Supreme Court has held in Hill that an ineffectiveness claim was not barred. Rather, it turned on whether the counsel's advice was in the range of confidence demanded by defense attorneys. Right. And don't you think that given the impeachment evidence that Judge Hardiman referred to, that how can we say as a matter of law, how could anyone say that it was outside the range to not call her? Because this impeachment evidence would just create even more doubt as to what she was saying. It seems, Your Honor, that Laura Garrett's testimony was so genuinely exculpatory that any minor doubt that it may have caused the jury... Not that she didn't see it. Not that she didn't see what happened. She said she's crouching behind a truck. That is for the jury to determine, Your Honor. Additionally, we don't know exactly what Laura Garrett would have said on the stand or what she would not have said. She testifies that she would have stated that she did not see Frasier, that she saw Frasier. He was not a shooter. He was running away from the shooters at the time the shots were being fired. She saw both shooters. Neither of the shooters were Frasier, and that Frasier was wearing different clothing than the shooters on the night in issue. But we also know she made prior inconsistent statements with everything you just said. That is hearsay within hearsay, Your Honor. What she told to Figueroa or Medina or Colon and the police recorded in their police statements. But it could have been used as impeachment. It could have been used against her. It could have been used against her, but it is still up to the jury to determine. It would have only taken one juror to have... The whole defense theory of the case was that Jerry Frasier happened to be on the street and was not involved with the shooting, right? Correct. All right, but she told... Laura Garrick told somebody that Frasier called her after the crime was committed and expressed concerns about Colon, right? That's really inconsistent with the notion of him being an innocent bystander, right? Your Honor, that is also hearsay, which, yes, could have been used for impeachment evidence while she was on the stand, but her testimony could have superseded any type of inconsistency the jury would have picked up. In addition, but for counsel's error in failing to call Laura Garrick, one juror could have voted to acquit Mr. Frasier, which would not have resulted in a first-degree murder conviction for him, and even Mr. Frasier could be nearing parole eligibility at this point, even if he was convicted for something less than first-degree murder. And at this time, he is subject to life in prison. That is a suspect. You've got some halfway decent arguments, but that one, well, I'm going to end on that one. That's a real reach. Under these scenarios, the only thing that may ultimately come out of this is third-degree murder. If you get a felony murder, you still have life in prison. And this is not a third-degree murder case. This is either first, second, or not guilty. There's no third-degree murder here. There's definitely aiding and abetting and conspiracy in the case. Even if it was conspiracy and he was subject to imprisonment, he still may be eligible for parole around this time. And with his life in prison at this time, he is not eligible for parole. Your Honor, I see that my time has expired. Thank you. Thank you. Ms. Harney? At this time, Your Honor, I'd like to request two minutes for rebuttal. Okay. Now, your partner and colleague and former friend before you walked into the courtroom today has been putting an awful lot in your lap. The first three or four questions I asked, you were going to answer all those questions. So maybe you can help me out with my questions. Yes, Your Honor. Why isn't there an independent and adequate state bill of law here? So an inadequate and adequate state grounds must be firmly established, regularly followed, and easily ascertainable in order for a claim to be defaulted. And that's simply not what we have here. This circuit has admitted a three-part test by Sue John B. Lennon. The rule speaks in unmistakable terms. All state appellate courts have refused to consider the claim, and the refusal is consistent with other decisions. And that's not the rule that we have here. Well, it doesn't have to be 100 percent consistent. It has to be a rule which is generally followed, but generally followed to the level of some consistency, but not the exclusion of all cases where the rule is not as thoroughly followed. And here you have a guilty plea colloquy. As I said, a pretty thorough and careful colloquy. Did not mention the name of the witness, and maybe that's your argument, but I'm not sure that's going to get you very far. Why couldn't the state court look at this and say, you know, if we open up this ball of worms, we're basically saying colloquies mean absolutely nothing. You can go through like a Kabuki dancing trial, waste time with the judge and jury, have a little colloquy. It's not going to mean anything because we still have to entertain the claims and appeal even though the defendant has clearly waived on that trial. Well, the answer to that, Your Honor, is that this is a fact-specific inquiry. We can look to the superior court's opinion to see how they discussed Mr. Frazier's claim. That is, if the superior court, when addressing Mr. Frazier— You didn't have—the superior court, didn't he just argue sufficiency of the evidence or weight of the evidence? In the superior court, no, Your Honor. He had two—in his appeal from his PCRA— Okay, back up. I'm talking about direct appeal. On his direct appeal, wasn't there a sufficiency of the evidence or weight of the evidence? Yes, Your Honor. Okay. When was this argument that it was procedural first made? It was—the argument that it was procedural was first made in federal court on his habeas appeal. And can you show us where in the record that was? I don't want to—it might be asking too much. It was definitely raised in the district court, and it was never raised in the state court. So how can we fault—you know, this is a state case, right? So how can we fault the state court for making an error when that procedural argument was never presented to the state court? Well, Your Honor, this court can still consider Mr. Frazier's procedural claim, despite it not being raised in the state court, because the substantive claim also speaks to the procedural in the sense that, as my co-counsel discussed, the validity of the advice is necessarily—the validity of the colloquy is necessarily dependent on the validity of the advice. All right. But then I think you need to address Chief Judge McKee's questioning in that regard. Isn't he right that there's a distinction between advising Mr. Frazier that they had a right to call Garrett and advising him that it might be a bad idea to call Garrett? Aren't those two different things? They're not two different things, Your Honor, and Chief Judge— Why not? They're not the same thing—or they are the same thing, rather, because it's all bound up in the decision to call or not call. Which decision is it to call a witness? It's the client's decision. Okay. Yeah. Well, then there's a distinction between the decision to call the witness and the decision to— as to whether or not the witness should be called is different from the decision to call the witness. The lawyer might want to say, I don't think you should call that witness, but it's up to the client to say, I want that witness in the witness stand. I used to see trials all the time where lawyers would tell their client, I don't think you should get in the witness stand, and the client would say, I don't think so, Your Honor. For example, you quoted Mr. Frazier's response to the court's colloquy, and absolutely it's my decision to not call any witnesses. But if the advice that Mr. Frazier received from trial counsel was so deficient  of the reasoning as to why to not call any witnesses, then it falls into the same pool as trial counsel's failure to call the witness in the first place. So the advice that was given, it's the same thing. In what way could that advice have been deficient? Because what comes to mind initially is, hey, Jerry, we better not call her. She's going to kill us. They're going to impeach the heck out of her, so we better not call her. Are you saying that would be deficient advice? That might not be deficient advice, but the problem. So then how do we know? I mean, I guess what I'm struggling with is at some point, in order to get a federal evidentiary hearing, isn't it incumbent upon the habeas petitioner to put forward something to show that the hearing was what the state court did was improper? And there's no there there except for this affidavit from Garrett, which I think we all agree is not cumulative, but it hardly screams from the rooftops that Frazier's innocent. Well, yes, Your Honor. The problem with that is that in other cases where courts have said that there is no evidentiary hearing because the habeas petitioner has not put anything forward, that's because in the state court proceedings at some point, there was an evidentiary hearing where the petitioner was allowed to develop the record. Here, Mr. Frazier has never had an evidentiary hearing, not in the state courts and not in the district court below, and that's why the petitioner has diligently attempted to obtain, as he has sought an evidentiary hearing from the beginning, and has never been granted one. That's why we're here asking. Excluding the PCRA from the beginning of the directed appeal. Correct, Your Honor. There was never an evidentiary hearing, so he has never had the opportunity to put forward any evidence that would exist in other cases. That's why this case is different. It's why this case is odd, because Mr. Frazier wants to develop that record. He has asked to develop that record for years and has never been given the opportunity. If he wants to develop the record, wouldn't it have been helpful for him to obtain an affidavit from the attorney and submit that affidavit? Your Honor. Without that presumption. You're stuck with that very, very forceful presumption, and there's enough on this record to suggest that there was plenty of sound strategic reasons why he didn't want to put Garrett on the witness stand. You've heard us ask about that. Well, yes, Your Honor. It would have been helpful for Mr. Frazier to obtain an affidavit, but it is not incumbent on trial counsel to provide one if trial counsel does not want one. If trial counsel was, in fact, ineffective, he may not have wanted to provide that affidavit. Well, they can put an affidavit saying that. They can put an affidavit saying trial counsel did not get on the witness stand and admit his own ineffectiveness. And then there's enough. It seems to me that in and of itself might overcome the presumption because we begin to go to the trial counsel saying, I blew it. And when that affidavit comes in from appellate counsel, it seems to me the presumption is defeated at that point. That would be a pretty powerful affidavit. It's not from trial counsel, but from appellate counsel or PCRA counsel as to why you can't submit the affidavit from the trial counsel. Your Honor, that would have been helpful. But for whatever reason, it was not done by any of his previous appellate counsel. And while it would have been helpful, the distinction between that seems hyper-technical in the sense that a two-line affidavit from PCRA or his other appellate counsel saying, I tried and couldn't get it, you know, so sworn, seems to be a hurdle that need not be surmounted. Well, it is hyper-technical, but going back to AEDPA again, AEDPA's probably the most hyper-technical statute. I mean, in relation to Jackson Beckham's account, I've never seen anything more technical than AEDPA. Correct, Your Honor. AEDPA is hyper-technical, but AEDPA also does not require the provision of affidavits. It does require the provision of evidence, admittedly. And while we have discussed the affidavit from Ms. Gary not being the best evidence, it's still some evidence. But how can you satisfy the prejudice standard? Can you repeat the question? The prejudice standard, reasonable probability that the outcome would have been different? Well, the reasonable probability argument is one that can only be addressed by... Good evidentiary here. Yes. All right, we'll let you go on that one. All right, thank you, Your Honors. Thank you. Good morning, May Police Court. I'm Ryan Dunleavy for the Commonwealth Appellees. Your Honor, the briefs raise a number of complicated questions about the standard of review and whether this claim is reviewable at all. But ultimately, as the district court concluded, Mr. Frazier's claim fails on the merits for two reasons. Number one, he cannot show reasonable probability of a different result if Laura Garrett testifies. And number two, for similar reasons, he cannot rebut the presumption that counsel's decision not to call... Wouldn't you agree that Garrett's testimony is not just cumulative? It's great for our conclusion. What she has to say in that affidavit, that is substantially more substantive than just being cumulative and not admitting that testimony because it's cumulative. Would you agree with that? Well, I'd agree that using the term cumulative is probably... It's shorthand. It's not the ideal way of addressing everything that's said. Then being error. Is error the word for shorthanded? I wouldn't say it's error because ultimately... How can it be cumulative when it's different, certainly in some respects, from what we see from Medina and Cologne? It is different in certain respects, but... But by definition, it's not cumulative. It's a big difference. The difference is he's not the shooter. I think your premise is that cumulative means the witness's accounts are going to be identical. That's never the case. Let's say it's... It adds details. It adds details. It doesn't really add anything to the jury's deliberation. It doesn't add anything for that one to do. I think the point is it doesn't add anything material. She says he's not the shooter. Are you saying that's not material in a murder case? Certainly it's material, except that it doesn't add anything material to what was already in the case. No one else said that he's not the shooter. Actually, Ms. Figuerella says, and counsel makes use of this, Figuerella says, well, I saw these two men chasing after my husband, and I ducked behind the door, and she's asked if Mr. Frazier was one of those two men. She says no. Trial counsel makes use of that throughout trial to challenge Mr. Colon's testimony that, no, Frazier was one of the gunmen, too. Now, I think Figuerella's got... She doesn't have the opportunity to view everything that happened that Colon did. She's in the kitchen when the shooting starts. Right. So right there, Garrett's a more precipient witness. That adds something to the corpus of evidence if her affidavit is true. I'd argue it doesn't, because Ms. Garrett argued that in her affidavit. If you look at her affidavit, she doesn't explain. She doesn't say, well, I saw what happened on the corner. It's vague in parts, but it's stronger for the... I don't know how you can deny that it's stronger for the defense than anything that we have on the record. I don't understand why you're fighting on this ground. I don't know. It seems to me your argument is that she would have... Even though the affidavit really helps the defense, you had a couple howitzers on impeachment that would really overwhelm that. Respectfully, Your Honor, that's my point in our brief, is that ultimately you can say it's error to describe this as cumulative, but ultimately he can't prevail even under the de novo standard. If this is not a state habeas case, if this is in front of the court on the 2255, his claim fails. And he's not proffered anything that warrants him a hearing. He's not explaining why he... What should he have done? What could he have done in the state court in order to earn a hearing there? I think in the state court to get a hearing there, he proffers an affidavit from trial counsel or at least explains why he hasn't. And they never did that. They never said, you know what? Counsel didn't want to cooperate. I couldn't get a hold of counsel. Counsel is deceased. They never said that. At least the PCRA judge sitting there reviewing this petition is going to wonder, well, the rule requires you to proffer a statement or at least a certification from counsel. And he's not done that. And then you've got counsel... So once he fails to do that in the state court, is it your argument that he can't possibly under E-2 get a hearing in federal court because he lost his chance to do it in the state court? Not necessarily. I mean, whether he's entitled to a hearing under E-2 depends on his diligence. Really asking for a hearing isn't enough, not in this case, because of the state of the trial record, because of what his claim is. The claim is a Strickland claim, and in Strickland the strong presumption is that counsel had a reasonable basis. His own statements at trial essentially confirm that. And then we know that... How do his statements at trial confirm his reasonable basis? He said he wasn't going to call the witness. It confirms he's got a strategic basis. It just confirms that they conferred. I'm sorry? It just confirms that they conferred, that he conferred with his counsel. And you're absolutely agreeing with counsel's decision. Right, but it may not have been strategic. The counsel may have said, listen, you know, we just don't have time for this. I've got somewhere else to be this afternoon. Well, I think you have to view his statements within the context of the entire record. The entire record, counsel is clearly aware of Ms. Garrett. He knows what she's going to say. Ms. Garrett in her affidavit says, I talked to counsel before trial. So there's no question as to whether it was an investigation,  You can't really infer a strategy, though. The records are not set on that. So I think you're left with a presumption. Anytime trial counsel talks to a witness, that's the end of the inquiry. When he talks to the witness, and therefore he can't possibly have been ineffective, no matter how deficient his reasoning may have been or her reasoning may have been, in not calling that witness. That argument seems to be a real Pandora's box, if we were to buy that. I don't think that's necessarily the rule. I'm not arguing that that's the rule. If you accept your argument, you're saying that's enough. That he spoke with her? Right. No, not necessarily. I don't think that's true. But if you look at the rest of the record, references to Ms. Garrett during trial, she's hiding behind this truck. She's not in a position to see everything that Cologne saw. And then you know that she's married to Medina, who gets up and testifies and makes a fool of himself in an effort to protect his friend. She's vulnerable for the same reasons her husband is. But what really saves you is the presumption, right? If the record is devoid, as this record seems to be, regarding what the strategy was, and we're just looking at the record and drawing inferences, if there were presumption the other way, you'd be in trouble, I think. I think that's right. But the inferences you can draw from the record as a whole support the presumption of reasonableness. And Mr. Frazier is the one who spoke with counsel about whether to call witnesses. He knows why Ms. Garrett wasn't called, and yet he's said nothing. But we don't know whether his lawyer didn't give him really bad advice in advance of him saying to the judge, yeah, I don't want to call any witnesses. We don't know that because he's never alleged that. We'll never know that. But he's never alleged that his statements were prompted by bad advice from counsel. Why can't we assume that? That's their argument. Why can't we assume that guys on trial for murder, I don't know if the death qualified jury or not, but he ends up with life. Yeah, so if really he's looking at life imprisonment, then he may be looking at death. I just thought, no, but why shouldn't we assume that whatever his lawyer told him, if it was ineffective and deficient, it was sufficient to get this guy to make a bad decision in terms of leaving Colin Garrett? I think as you suggested when my opponent was arguing, these are two separate claims. The reason he's not making those out, he's not alleging bad advice. I don't know what that reason is, but it severely undermines his claim that counsel had no reasonable basis for calling this witness. So you look back at the trial record and what we do have, and that all supports the presumption of reasonableness. Why shouldn't we at least get, is there, all he's asking for right now is a hearing. Right. He's never had that. In most of the cases that come up, there's been some opportunity to develop the record in the state. I don't say opportunity. There's been some development of the record in the state court by a hearing. Why shouldn't he at least get a hearing? What does the Commonwealth lose by a remand when the defendant gets a hearing? Either the trial lawyer will come in, say that he had some strategy, explained what the strategy was, and then the judge will make a determination, or he'll say, you know, I just really didn't have much of a strategy, and the judge will make a determination. It's a pretty fast hearing. Why shouldn't there at least be a chance for a hearing to develop something? I think in certain cases a hearing is appropriate when you look at the existing record and you can't identify an apparent reasonable strategy. That's when a hearing is appropriate. You hear from trial counsel to give him an opportunity to explain his actions. And oftentimes counsel is not going to remember. And this is a hearing. He says that. Then he says, look, I can't remember. And then the court will look at what's in front of it and determine whether or not this would suggest enough of a reasoned judgment to not overcome the presumption. But at least there's some opportunity there to determine whether or not counsel's advice is based upon some appropriate strategic reason. Well, to begin with, Strickland is an objective standard. It doesn't require inquiry in the actual rationale. Richter tells us that's not what it's about. The standard is not about counsel's actual subjective rationale. And you're saying we have enough here to look at what she was going to say and how it interacted with others and the impeachment evidence. We have enough for us to say that we can imagine a reasonable strategy so we don't need a hearing? Absolutely. That's correct. Anything else? If there are no additional questions. Okay, thank you. Thank you, Your Honor. I think we have time for a rebuttal. I'm not sure who's going to do the rebuttal. I'll have counsel do it. That's fair. You should put everything on you first on counsel. That's appropriate. Yes, Your Honor. To respond to some of your questions, here the record fails to indicate any reason why counsel did not call Garrett who was ready, willing, and able to testify. This court has multiple times held that ineffective assistance of counsel claims must be evaluated based on counsel's actual rationale for his actions rather than on speculation about counsel's possible rationale. An evidentiary hearing, as was held in Branch, is required where a petitioner's claim turns on the reasons why his counsel did not call witnesses to testify, and those reasons have not been developed in the record. The court's determination of a Strickland claim requires an analysis based on a complete record and requires counsel's actual rationale for his decisions. A determination must be made with the understanding of counsel's thought process so that a conclusion whether counsel was ineffective can be based on facts of record and not on assumptions or sheer speculation. The court must determine counsel's actual intent because otherwise the incompetency of defense counsel could be rewarded by ingenuity on the part of a state's attorney in supplying hypothetical strategies. But this is an objective standard, isn't it, sir? Don't you think you're right about that? Counsel's actual intent, isn't he right about the standard being an objective one? Your Honor, that's correct. Under Strickland, it's an objective standard, but this court has held multiple times in Thomas v. Varner, Marshall v. Hendricks, the Branch case, that we must analyze counsel's actual rationale in determining what counsel's actual rationale was in failing to call a witness, for example. Courts cannot adopt theoretical justification. But don't we need to do that when we can't figure from the record what that, like when we're puzzled as to why wouldn't you have called this person? But when we, when you can say and look from the record and say, ah, I know why you wouldn't have called this person, doesn't that kind of end the need for a hearing? It does not, Your Honor, because in this case, for example, there is no indication on the record what counsel's actual rationale was. Anything that we would put forth, that the Commonwealth has put forth, is a theoretical and hypothetical justification. There are theoretical justifications, but those are the kind of sheer speculation that an evidentiary hearing is to prevent. But if the justifications were off the wall, let's say, we don't agree with the justifications, but we look at the issue. Would you, would a reasonable attorney have had a good basis for calling this person or not? We have to say the end result, i.e., that she wasn't called, was not substandard, wouldn't we? We would need an evidentiary hearing, Your Honor, to determine whether counsel's rationale was actually reasonable. Okay. Thank you, Your Honors. Thank you. I also want to thank both law counsels. I don't know if I don't want to exclude you from this, but you're an old hand at this. You've been around for a while. I don't think I've seen you before. Have you argued in front of me before? Not in front of you, Your Honor. I met a few years ago while I was working for Judge Nygaard. This is my third argument. Oh, okay. You voted for Dick? Right. Fantastic. Okay, great. It's a wonderful colleague and a great friend. But on the other side, we have two lawsuits, and I want to thank you for one, thank you, Maxwell, for leading to do this, and, Professor, thank you very, very much for putting in the time to supervise them and take this case on, and whoever is the ultimate bureaucrat at the law school who volunteered the resources of the law school, it may be you. If it's not you, please extend our thanks in regards to that. You did a wonderful job. I'm beatifying you a little bit, but you did a wonderful job. It's not to say you're going to win. I wouldn't say you lose either, but you did a very, very good job. Some very tough questions. So thank you very, very much. Thank you very much, Your Honor. Thank you. Mr. O'Malley, thank you. Thank you.